## RELIEF ASSN. OF UNION WORKS, CARNEGIE STEEL CO. v EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES

Ohio Appeals, 7th Dist, Mahoning Co.

No. 2520. Decided May 4, 1939

Barnum, Hammond, Stephens & Hoyt, Youngstown, for appellee.

Garfield, Cross, Daoust, Baldwin & Vrooman, Cleveland, for appellant.

## OPINION

By ROSS, J.

Appeal on law and fact from the Court of Common Pleas of Mahoning County.

The plaintiff was a policy holder in the defendant organization. The policy provided for certain adjustments periodically covering dividends and rebates payable to the plaintiff. The policy was a group policy insuring all the members of plaintiff.

A clause in the policy furnishes largely the basis for dispute in this litigation, and is the predicate for the claim for relief, substantiated by the facts alleged in the amended petition. This clause is as follows:

"The proportion of divisible surplus accruing upon this policy shall be ascertained annually. Any sum apportioned to this policy as a dividend shall be paid in cash to the Union on the anniversary of the Register date, or upon written notice to the Society shall be applied to the payment of any premium thereon."

It is alleged in the amended petition that the policy was in effect from May 14th, 1926 until July 1st, 1935, that the plaintiff paid all premiums required to be paid.

The original petition contained six causes of action, based upon the operation of the policy in as many years.

The amended petition contains but one cause of action.

The controversy between the parties is portrayed in the following allegation of the amended petition:

"* * * instead of ascertaining annually the amount of divisible surplus, if any, accruing upon said policy, has arbitrarily and without justification computed the divisible surplus accruing upon said policy upon the basis of the term and life of the policy, to-wit: from the date of its issuance until July 1st, 1935."

It is thereafter stated in the amended petition that:

"Plaintiff further says that during the year 1926, plaintiff, on behalf of its members, paid premiums to said defendant company in the sum of Twenty-nine Thousand Three Hundred Forty-

one and no/100 Dollars ($29,341.00); that during said year death claims were paid out in the sum of Twenty-nine Thousand and no/100 Dollars ($29,000.00), and disability claims paid out in the sum of Three Thousand and no/100 Dollars ($3,000.00) resulting in a loss to defendant company upon said policy in the sum of Two Thousand Six Hundred Fifty-nine and no/100 Dollars ($2,659.00);"

Allegations of similar import showing either a loss or gain to the defendant follow applicable to the years 1927, 1928, then appears the following allegation:

"That for the year 1928, said defendant company wrongfully reimbursed itself for the above mentioned loss of the years 1926 and 1927, and further paid to plaintiff, by way of divisible surplus, the sum of One Thousand Eight Hundred Eight and 33/100 Dollars ($1,808.33), and retained, after so reimbursing itself, the sum of Two Thousand Thirty-two and 96/100 Dollars ($2,032.96) out of the premiums paid during said year 1928, by way of costs of administration, cost of risks carried, commissions, and other necessary incidental expenses;

"That the total amount of premiums paid by plaintiff to defendant for the three (3) years, 1926, 1927 and 1928, was the sum of Eighty-three Thousand One Hundred Forty-five and 29/100 Dollars ($83,145.29); that upon defendant's own computation they retained out of said total premiums the costs of administration, cost of risks, commissions, etc., .0244% of said total premiums; and that if said divisible surplus had been computed upon an annual basis for the year 1928, the sum retained by defendant out of the premiums paid for the year 1928, .192% thereof."

Subsequent allegations of the amended petition deal in a similar manner with the retention of the divisible surplus by the defendant in contravention of the plaintiff's rights under the contract for the years 1930, 1931, 1932, 1933, 1934, it being finally stated that the defendant refused to pay the plaintiff any sum for the years 1932, 1933, 1934.

It is further alleged in the amended petition:

"Plaintiff further says that by reason of aforesaid, defendant company is indebted to this plaintiff in the sum of at least Forty-one Thousand Two Hundred Ninety-seven and 23/100 Dollars ($41,297.23), together with interest thereon at the rate of six per cent (6%) from the first day of July, 1935."

And it is further alleged that the plaintiff has repeatedly since July 1, 1935 requested the defendant to pay "said sum due it" and defendant has refused to pay such sum.

The prayer of the petition is for an accounting and for recovery of such sums as may be found due plaintiff, and that certain interrogatories be answered under oath.

The answer is largely a seriatim denial of the controversial matter alleged in the amended petition.

The issue presented by the pleadings involved a rather simple question under the policy contract. This briefly stated is: Was the plaintiff entitled to an allocation of its share of the divisible surplus based upon transactions between the parties each year or over the entire period of nine years, in which the policy was in effect.

A jury was waived and the case was tried as a chancery case by the court, terminating in an order requiring the defendant to file in the office of the Clerk of Court an accounting in writing within 60 days "in accordance with this court's opinion filed herein, which opinion is made a part of this journal entry." The opinion was not spread upon the journal, nor do we find same among the original papers presented with the transcript, although a copy of the opinion is before the court.

In this opinion the trial court made this statement:

"To repeat, the question here is whether the practice and method used in the ascertainment and distribution of the surplus accruing to the instant policy at the end of each year of its renewable term was in accordance with these provisions of the policy, statutes, and the law applying to the nature of the contract."

The trial court treated the transaction between the parties as constituting a series of yearly contracts each independent of the other and, therefore, concluded that the defendant had no power to offset losses in one year against gains in other years.

The court found that the formulas used by the defendant in the latter years were contrary to the terms of the contract and concluded that the plaintiff was entitled to an accounting upon the basis of individual years.

From what has been said, it is apparent that this is an action to recover a certain sum of money due plaintiff by the terms of a contract. The plaintiff in its petition definitely specifies such sum to the actual cent, and states it has demanded that sum from the defendant. The relief of an accounting is purely ancillary and collateral to this simple law action.

The plaintiff claims that if certain formulas are used this sum will be due it. The defendant claims that these formulas are not proper and that it has paid the plaintiff all that is due it. This cannot be considered an action for an accounting. No fiduciary relationship exists between the parties. The rights are definitely fixed by contract.

We quote from Equitable Life Assurance Society, etc. v Brown, 213 U. S., 25, pages 36 and 37 of the opinion:

"So far as the bill in this suit is based upon any alleged failure to comply with its charter or contract obligations as to the distribution of its entire net surplus, the bill is clearly demurrable under the rulings of the Court of Appeals of New York in Greef v Equitable Life Assurance Society, 160 N. Y. 19.

"So far as the bill is based upon the theory of a trust relationship between the policyholders and the society, it is at variance with the settled law of New York as laid down by a long and unbroken line of decisions, culminating in the Uhlman decision.

"The relation between the parties arises solely from the contract by the terms of which their rights must be governed. The insurance company is not a trustee for the insured, even in case of a tontine policy, much less in case of an ordinary life policy, such as that held by complainant. If the terms of the contract are violated by the petitioner the remedy of the policyholder is by an action at law to recover damages for breach of contract. Uhlman v N. Y. Life Ins. Co., 109 N. Y. 421; Everson v Equitable Life, 68 Fed. Rep. 258; aff'd, U. S. Cir. Ct. Ap., 71 Fed Rep. 570; Hunton v Equitable Life, 45 Fed. Rep. 661; St. John v American Mutual Life Ins. Co., 13 N. Y. 31; Cohen v Mutual Life Ins. Co., 50 N. Y. 610; People v Security Life Ins. Co., 78 N. Y. 114; Taylor v Charter Oak Life Ins. Co., 9 Daly 489; aff'd, 8 Abb. N. C. 331; Bewley v Equitable Life, 61 How. Pr. 344; Buford v Equitable Life, 98 N. Y. Supp. 152; Pierce v Equitable Life, 145 Massachusetts, 56; Greeff v Equitable Life, 160 N. Y. 19.

"The bill cannot be sustained as a bill for fraud because, so far as any fraud affecting complainant's rights is concerned, he has an adequate remedy at law. Insurance Co. v Bailey, 13 Wall. 616, 623; Buzard v Houston, 119 U. S. 347, 352; London Guarantee Co. v Doyle, 130 Fed. Rep. 719; United States v Bitter Root Co., 200 U. S. 451.

"Nor does the fact that the bill also seeks discovery and an accounting, make a case for jurisdiction in equity.

"Discovery and accounting are no longer sufficient ground for equitable jurisdiction in aid of relief of a legal character. Rev. Stats., Sec. 724; Stafford v Ensign Mfg. Co., 120 Fed. Rep. 480; see also cases supra."

. Again, the syllabus in the case of **Complete Building Show Co. v Albertson, 99 Oh St 11,** is:

"1. The jurisdiction of the Court of Appeals is now conferred only by **Sec. 6, Art. IV of the State Constitution.** In the trial of cases on appeal its jurisdiction is thereby limited to chancery cases and can neither be enlarged nor curtailed by the general assembly.

"2. An action for the recovery of money as a debt or as damages is essentially an action at law and, where no fiduciary or trust relation exists between the parties, cannot be converted into a suit in chancery, for an accounting by averments that facts relative to plaintiff's claim and the extent of his damages are not known to plaintiff, but are within the knowledge of the defendant."

. On page 14 of the opinion the Court say:

"In discussing the question by which the extent of equity jurisdiction is to be tested and practically determined, it is stated in 1 Pomeroy's Equity Jurisprudence (3 ed.), Section 62, that 'The question is * * * whether the circumstances and relations presented by the particular case are fairly embraced within any of the settled principles and heads of jurisdiction which are generally acknowledged as constituting the department of equity.' It is further said that one of the results which follows is that 'a court of equity will not, unless perhaps in some very exceptional case, assume jurisdiction over a controversy the facts of which do not bring it within some general principle or acknowledged head of the equitable jurisprudence.'

"In applying the test suggested we are admonished to ascertain, examine and consider 'the circumstances and relations presented' by this case, and the case made in the petition, as well as the prayer, must be looked to in determining the character of the action. Reed's Admr. v Reed et, 25 Oh St 422."

And on page 16 of the opinion, the Court says:

"True, plaintiff avers that it does not know the extent of the claims which defendant has failed to pay and therefore cannot state in its pleading the amount of its damage; but now that adequate means of obtaining discovery from parties to actions at law are afforded by our statute, suits for discovery, as previously prosecuted in equity, are no longer necessary; and it is elementary that where an adequate remedy is afforded at law equity may not be resorted to. **(Chapman v Lee, 45 Oh St 356.)** The only equitable relief prayed for in this action is that of injunction, and that does not appear to have been urged. Even if it were, it was merely ancillary and incidental and cannot serve to change the nature of an action from one at law to a suit in chancery."

In **Wilson Improvement Co. v Malone, et, 78 Oh St 232,** the first paragraph of the syllabus is:

"In view of the comprehensive terms of Section 5130, Revised Statutes, issues of fact in all actions 'for the recovery of money only' are triable to a jury and no exception is admitted because of the number of the items in an account which is the basis of the action, unless there is such relation of parties as will authorize a court of equity to decree an accounting by one for the information of the court and his adversary."

In this case the court calls attention to the mandatory provisions of §11379, GC, formerly 5130, Revised Statutes. This section reads as follows:

"Issues of law must be tried by the court, unless referred as hereinafter provided. Issues of fact arising in actions for the recovery of money only, or specific real or personal property, shall be tried by a jury, unless a jury trial be waived, or a reference be ordered as hereinafter provided."

On page 240 of the opinion, the Court say:

"The consideration definitely urged here is, that the legal remedy is inadequate because in the multitude of parties and questions and controverted items of account, there arose such complexity that it was not practicable for the case to be tried and determined by a jury. If both parties were of that opinion it was competent for them to waive a jury, as they did in the Court of Common Pleas, or they might have consented to a reference pursuant to the provisions of the code. But it is obvious that the view thus urged, no form of equitable relief being sought, is but an adverse criticism of the general assembly for enacting Sec. 5130. That view derives most support from the point decided, and from the language of the opinion in **Black, Receiver v Boyd, 50 Oh St 46.**"

See also **Harlow, etc. v Hoehn, et, 17 O. C. C. (N.S.) 484; Murphy v Jackson, 17 Abs 321;** 1 O. Jur., p. 208, §28; 1 Am. Jur. 299 and 300.

Many authorities to the same effect might be noted, but those here mentioned are sufficient in our opinion to compel the conclusion that the action herein involved is a simple law action and, therefore, not subject to an appeal upon law and fact.

Is the case subject to remand under the provisions of §11564? We apprehend that it is not. This conclusion is predicated upon an examination of the last act of the trial court. In effect this amounts to simply an interlocutory order to the defendant to furnish the plaintiff with a new set of formulas based upon the conclusion that the yearly transactions between the parties constituted severable and independent contracts. No judgment against the defendant was rendered ordering it to pay any sum of money. The order lacks that finality requisite as a predicate for an appeal even upon questions of law. The jurisdiction of this court is made dependent upon the existence of a judgment or its equivalent which has been brought before it by a notice of appeal filed within due time.

No such judgment or its equivalent exists in the instant proceedings.

As long as the people of the state retain in their constitution a mandatory differentiation between suits at law and bills in equity and deny inferentially to the legislature the power to confer appellate jurisdiction upon this court to review other orders than those of a final character, so long will courts be confronted with the necessity of interposing vexatious and purposeless delays in the administration of justice.

Jurisdiction, however, is power to act, and without that power this court is unable to entertain the consideraton of an appeal to it, beyond the scope permitted by the Constitution. There is no substantial reason why this court should not be permitted to pass upon the order herein made. The decisive fact is, however, that it cannot do so, until the people remove the limitation upon its power.

We, therefore, sua sponte dismiss the appeal and remand the case to the Court of Common Pleas for such action as may be in accordance with law.

HAMILTON, PJ. and MATTHEWS, J., concur.